BRADLEY R. MORGAN AND WIFE, TONJA D. MORGAN, AND BRADLEY DALE MORGAN, PLAINTIFFS V. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, DEFENDANT

No. COA97-722

(Filed 7 April 1998)

### Insurance § 528 (NCI4th)— automobile insurance—underinsured coverage—extent

The trial court correctly granted defendant State Farm's motion for summary judgment in a declaratory judgment action

MORGAN v. STATE FARM MUT. AUTO. INS. CO.

[129 N.C. App. 200 (1998)]

to determine whether plaintiffs had underinsured coverage (UIM) where plaintiffs rejected UM/UIM coverage in the Acknowledgment of Coverage Selection or Rejection form in 1991; the policy only provided the minimum statutorily required coverage; a notice mailed to plaintiffs in 1992 stated that UM/UIM coverage would be provided if plaintiffs did not return the form and also stated that would be carried only for higher than minimum liability limits; plaintiffs did not return the notice and renewed the policy six times; and UIM coverage was not required under N.C.G.S. § 20-279.21(b)(4).

Judge GREENE dissenting.

Appeal by plaintiffs from order entered 29 April 1997 by Judge Herbert O. Phillips, III in Carteret County Superior Court. Heard in the Court of Appeals 17 February 1998.

*Wheatly, Wheatly, Nobles & Weeks, P.A., by Stevenson L. Weeks, for plaintiffs-appellants.*

*Bailey & Way, by Glenn B. Bailey, for defendant-appellee.*

TIMMONS-GOODSON, Judge.

Plaintiffs Bradley R. Morgan, his wife, Tonja D. Morgan, and their son, Bradley Dale Morgan, instituted this declaratory judgment action against defendant State Farm Mutual Automobile Insurance Company (hereinafter "State Farm") in order to resolve the following issues: (1) whether State Farm properly informed them with regards to underinsured (hereinafter "UIM") coverage; (2) whether they had properly rejected UIM coverage; and (3) whether plaintiffs have UIM coverage in the same policy limits as their uninsured (hereinafter "UM") coverage. State Farm subsequently answered, requesting a declaratory judgment be entered finding and concluding that it had acted in accordance with the law when it did not add UIM coverage to a policy containing minimum bodily injury limits. Thereafter, State Farm filed a motion for summary judgment, and this motion was heard by Judge Herbert O. Phillips, III during the 11 December 1995 civil session of Carteret County Superior Court. The evidence adduced during the hearing tended to show as follows: Plaintiffs transferred their insurance policy to North Carolina State Farm when they moved to North Carolina in January 1990. In June 1991, plaintiffs reduced their automobile insurance coverage. On 14 June 1991, Mrs. Morgan signed an Acknowledgment of Coverage Selection or Rejection, rejecting

MORGAN v. STATE FARM MUT. AUTO. INS. CO.

[129 N.C. App. 200 (1998)]

UM/UIM coverage and selecting UM coverage at limits of $25,000/$50,000 for bodily injury, and $25,000 for property damage. This change would be effective at the next renewal date of 15 July 1991, and would apply to the three vehicles insured by State Farm at that time.

Effective 5 November 1991, North Carolina General Statutes section 20-279.21(b)(4) was amended to allow insureds to select UM or UM/UIM coverage of up to one million dollars, provided that in the case of UIM coverage, the insured carried in excess of a minimum prescribed by law ($25,000/$50,000) for bodily injury. *See* N.C. Gen. Stat. § 20-279.1, *et seq.* (1993) (also known as the Motor Vehicle Safety and Financial Responsibility Act of 1953). Accordingly, new Selection/Rejection Forms NCO185 and NCO186 were promulgated and approved by the appropriate authorities. The amendment to the statute applied to new and renewal policies written on or after the effective date of Sections 1 and 2 of the Financial Responsibility Act.

In January 1992, State Farm mailed to plaintiffs a form entitled "URGENT NOTICE State Farm Mutual Automobile Insurance Company Selection/Rejection Form Uninsured Motorists Coverage Combined Uninsured/Underinsured Motorists Coverage" (hereinafter "the Notice"). Therein, it was stated:

IT IS ABSOLUTELY NECESSARY THAT YOU COMPLETE, SIGN AND RETURN THE SELECTION/REJECTION FORM IF YOU WANT TO KEEP YOUR CURRENT COVERAGE. OTHERWISE, COVERAGE U OR U1 WILL BE PROVIDED WITH BODILY INJURY LIMITS OF $1,000,000 PER PERSON/$1,000,000 PER ACCIDENT. THIS WOULD RESULT IN A SUBSTANTIAL PRE-MIUM INCREASE.

The Notice also indicated that plaintiffs' current bodily injury limits were $25,000/$50,000 and explained that coverage U1 could be carried only if their liability limits for bodily injury were greater that the $25,000/$50,000 required by law. Plaintiffs failed to return this Notice. Plaintiffs renewed their policy, with the appropriate coverage, for at least six semi-annual periods after the 15 July 1991 renewal.

On 23 April 1994, Bradley Dale Morgan was involved in a serious automobile accident with an underinsured motorist. At the time of this accident, plaintiffs had in effect State Farm automobile liability

policy number 262 9432-A15-33G. By letter dated 26 May 1994, State Farm advised plaintiff that they did not have UIM coverage, but provided a "CERTIFICATE OF COVERAGE," indicating that plaintiffs' policy afforded UM coverage limits of $1,000,000. Enclosed in this letter was a copy of the Acknowledgment of Coverage Selection or Rejection executed by Mrs. Morgan on 14 June 1991.

After reviewing all of the evidence before him, Judge Phillips entered an order, out of term and out of session with the consent of the parties, granting summary judgment for defendant. Plaintiffs appeal.

Plaintiffs bring forth two arguments on appeal, contending that the trial court erred in granting State Farm's motion for summary judgment. For the reasons set forth herein, we disagree, and therefore, affirm the order of the trial court.

Plaintiffs first argue that summary judgment was inappropriate in the instant case because there was genuine issue of fact as to whether plaintiffs had UIM coverage under their State Farm insurance policy. This argument is unpersuasive.

Summary judgment is a device by which an expeditious end may be brought to unfounded claims or defenses before trial. *Pierce Concrete, Inc. v. Cannon Realty & Construction Co.*, 77 N.C. App. 411, 335 S.E.2d 30 (1985). Summary judgment is appropriately granted if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C.R. Civ. P. 56. In a declaratory judgment action where there is no substantial controversy as to the facts disclosed by the evidence, either party may be entitled to summary judgment, since the only matter in controversy is the legal significance of those facts. *Blades v. City of Raleigh*, 280 N.C. 531, 187 S.E.2d 35 (1972). The moving party bears the burden of establishing the lack of triable issue of fact. *Pierce Concrete*, 77 N.C. App. 411, 335 S.E.2d 30.

This Court has stated on previous occasions that " 'when examining cases to determine whether insurance coverage is provided by a particular automobile liability insurance policy, careful attention must be given to the type of coverage, the relevant statutory provisions, and the terms of the policy.' " *Hendrickson v. Lee*, 119 N.C.

App. 444, 449, 459 S.E.2d 275, 278 (1995) (alteration in original) (quoting *Smith v. Nationwide Mutual Ins. Co.*, 328 N.C. 139, 142, 400 S.E.2d 44, 47, *reh'g denied*, 328 N.C. 577, 403 S.E.2d 514 (1991)). In the case presently before us, the type of coverage in question is UIM, which is governed by section 20-279.21(b)(4) of the North Carolina General Statutes. *See* N.C. Gen. Stat. § 20-279.21(b)(4) (1993).

Section 20-279.21(b)(4) of our General Statutes provides as follows:

> [Automobile liability insurance policies] [s]hall . . . provide underinsured motorist coverage, to be used only with a policy that is written at limits that exceed those prescribed by subdivision (2) of this section and that afford uninsured motorist coverage as provided by subdivision (3) of this subsection, in an amount not to be less than the financial responsibility amounts for bodily injury liability as set forth in G.S. 20-279.5 nor greater than one million dollars ($1,000,000) as selected by the policy owner.

*Id.* Section 20-279.21(b)(2) establishes the minimum limits for an automobile liability insurance policy at

> twenty-five thousand dollars ($25,000) because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, fifty thousand dollars ($50,000) because of injury to or destruction of property of others in any one accident[.]

N.C. Gen. Stat. § 20-279.21(b)(2) (1993). "UIM coverage allows the insured to recover when the tortfeasor has insurance, but the coverage is insufficient to fully compensate the injured party." *Hollar v. Hawkins*, 119 N.C. App. 795, 796, 460 S.E.2d 337, 338 (1995) (citing *Sutton v. Aetna Casualty & Surety Co.*, 325 N.C. 259, 382 S.E.2d 759, *reh'g denied*, 325 N.C. 437, 384 S.E.2d 546 (1989)). However, pursuant to subdivision (b)(4), UIM coverage may be obtained only if the policyholder has liability insurance in excess of the minimum statutory requirement and, in any event, the UIM coverage must be in an amount equal to the policy limits for bodily injury liability specified in the policy. *Smith*, 328 N.C. 139, 400 S.E.2d 44.

In the instant case, Mrs. Morgan rejected UM/UIM coverage and selected policy limits of $25,000/$50,000 for bodily injury and $25,000 for property damage when she signed an Acknowledgment of Coverage Selection or Rejection on 14 June 1991. These changes to plaintiffs' policy went into effect upon the policy's renewal on 15 July

## MORGAN v. STATE FARM MUT. AUTO. INS. CO.

[129 N.C. App. 200 (1998)]

1991. As required by amendment to section 20-279.21 of the General Statutes, effective 5 November 1991, State Farm mailed a Notice to plaintiffs in January 1992 for signature. Therein, plaintiffs were asked to specify the amount of UM and/or UIM coverage they wished, and to sign and return the Notice. The Notice stated that if the insured did not sign and return the form "COVERAGE U OR U1 WILL BE PROVIDED WITH BODILY INJURY LIMITS OF $1,000,000 PER PERSON/$1,000,000 PER ACCIDENT." However, the Notice also indicated that plaintiffs' current bodily injury limits were $25,000/$50,000 and explained that coverage U1 could be carried only if their liability limits for bodily injury was greater than the $25,000/$50,000 minimum coverage required by section 20-279.21(b)(2). Plaintiffs failed to return this Notice, but went on to renew their policy with State Farm for six semi-annual periods. Under these facts, plaintiffs' State Farm policy did not contain UIM coverage, as plaintiffs had previously rejected UM/UIM coverage in the Acknowledgment of Coverage Selection or Rejection signed on 14 June 1991.[1] Plaintiffs have not made changes to the 14 June 1991 form. Significantly, however, plaintiffs could still receive UIM coverage if such coverage is written into the policy by statute as a matter of law. *See Insurance Co. v. Chantos*, 293 N.C. 431, 441, 238 S.E.2d 597, 604 (1977) (stating that the provisions of the Financial Responsibility Act, of which section 20-279.21 is a part, "are 'written' into every automobile liability policy as a matter of law, and, when the terms of the policy conflict with the statute, the provisions of the statute will prevail"). Nonetheless, since the policy in question only provided the minimum statutory-required coverage of $25,000/$50,000, the policy was not required to provide UIM coverage under section 20-279.21(b)(4). Accordingly, there was no genuine issue of material fact as to whether plaintiffs had UIM coverage under the State Farm policy at the time of Bradley Dale's accident on 24 April 1994.

In light of our finding in this regard, plaintiffs' second argument, which contends that there was genuine issue of material fact as to whether they were entitled to UIM coverage in the amount of $1,000,000, since State Farm had not obtained an approved UIM Selection/Rejection Form, also fails. Finally, because State Farm's policy did not provide UIM coverage to plaintiffs in the instant action as a matter of law, we affirm the order granting State Farm's motion for summary judgment.

---

1. Notably, since plaintiffs did not sign and return the Notice sent to them by State Farm in January 1992, plaintiffs have $1,000,000 in UM coverage.

MORGAN v. STATE FARM MUT. AUTO. INS. CO.

[129 N.C. App. 200 (1998)]

Affirm.

Judge WALKER concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

I agree that State Farm was not *required* to provide underinsured motorist (UIM) coverage to plaintiffs. This is so because the statute unambiguously requires a liability policy exceeding minimum limits ($25,000 per person/$50,000 per accident) as a prerequisite to UIM coverage. N.C.G.S. § 20-279.21(b)(4) (Supp. 1997). In this case, however, State Farm provided plaintiffs with a "Selection/Rejection Form" (the Notice) which, read in the light most favorable to plaintiffs,[2] offered them the option of obtaining UIM coverage in the amount of $1,000,000. Plaintiffs selected that option by not returning the form, as per the instructions in the Notice.

The face of the Notice contained the following language: "[UM] and [UIM] coverage options are available to me." The face of the Notice also stated: "I understand that . . . UM and [UIM] bodily injury limits up to $1,000,000 per person and $1,000,000 per accident are available." The reverse side of the Notice contained additional language. This language explicitly stated, entirely in capital letters, that it was "ABSOLUTELY NECESSARY THAT YOU COMPLETE, SIGN AND RETURN THE SELECTION/REJECTION FORM IF YOU WANT TO KEEP YOUR CURRENT COVERAGE. OTHERWISE, COVERAGE [UM] OR [UIM] WILL BE PROVIDED WITH BODILY INJURY LIMITS OF $1,000,000 PER PERSON/$1,000,000 PER ACCIDENT." Language near the bottom of the reverse side of the Notice stated that "[UIM] can be carried only if your Liability (Coverage A) limits for bodily injury are greater than the $25,000 per person/$50,000 per accident required by law."

The language on the face of the Notice, which states that *both* "[UM] and [UIM] coverage options *are available to me*," contradicts the language on the reverse side of the Notice that "[UIM] can be car-

---

2. *See Silvers v. Horace Mann Ins. Co.*, 324 N.C. 289, 295, 378 S.E.2d 21, 25 (1989) ("[I]nsurance contracts must be construed against the drafter, which had the best opportunity to protect its interest."); *Woods v. Insurance Co.*, 295 N.C. 500, 506, 246 S.E.2d 773, 777 (1978) (doubts in the language of an insurance contract will be resolved against the insurance company and in favor of the insured).

ried only if your Liability . . . limits for bodily injury are greater than the [minimum] required by law." This contradiction occurs because plaintiffs only had minimum liability coverage. Furthermore, the language that either UM or UIM coverage in the amount of $1,000,000 will be provided (if the Notice is not returned) contradicts the language that both coverages were available. In light of the ambiguity created by these contradictions it is unclear whether failure to sign and return the Notice would result in (i) an increase to $1,000,000 in plaintiffs' UM coverage, (ii) an increase to $1,000,000 in plaintiffs' UIM coverage, (iii) an increase in both UM and UIM coverages to $1,000,000, or (iv) an increase in plaintiffs' liability coverage beyond the minimum limits and a simultaneous increase to $1,000,000 in UIM coverage. Plaintiffs stated in their affidavits that when they received the Notice, "we wanted the additional [UIM] coverage [and] elected not to sign [the Notice] and did not return [the Notice] to State Farm." Under these circumstances, the Notice must be construed against State Farm and in favor of plaintiffs, thus providing them with $1,000,000 in UIM coverage. I would therefore reverse entry of summary judgment for State Farm and remand for entry of summary judgment for plaintiffs.

